# FILED

OCT 2 3 2020

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

1) CHARLES TURPIN, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

1) HURRICANE EXPRESS, INC. and
2) JONATHAN, LTD.,

Defendants.

Case No.  4:20-cv-00544-JED-FHM

JURY TRIAL DEMANDED

CLASS & COLLECTIVE ACTION

## COMPLAINT

Plaintiff Charles Turpin, individually and on behalf of all others similarly situated

("Plaintiff"), by and through his undersigned counsel, for his complaint against Hurricane

Express, Inc. and Jonathan, Ltd. (together, "Defendants"); hereby states as follows:

### NATURE OF SUIT

1.      This is a class and collective action brought against Defendants to challenge,

among other things, their policy and practice of unlawfully misclassifying their non-exempt

driver employees ("Drivers") as independent contractors who are exempt from the

provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and various

employee protections provided by Oklahoma law. Plaintiff and the classes of similarly

situated individuals are Drivers.

2.      Plaintiff Charles Turpin ("Plaintiff") and putative classes and collective

members are current and former Drivers employed by Defendants. Drivers for Defendants



___✓ Mail   ___ No Cert Svc   ___ No Orig Sign

___ C/J   ___ C/MJ   ___✓ C/Ret'd   ___ No Env

___ No Cpys   ___ No Env/Cpys   ___ O/J   ___ O/MJ

are responsible for safely operating a commercial vehicle and transporting cargo exclusively for Defendants' clients to a destination in a timely manner.

3.      Rather than classifying Drivers as "employees" as that term is defined by the FLSA and Oklahoma law, Defendants classify the Drivers as independent contractors, sometimes erroneously referred to as owner-operators. As a result of this treatment, Defendants fail to properly track all hours worked by the Drivers, pay minimum wages for all hours worked, make improper deductions from Drivers' wages, and fail to pay Drivers all wages due at the end of their employment.

4.      Defendants effectively bar Drivers from engaging in business with anyone other than Defendants, thereby making them financially dependent on Defendants. Additionally, Defendants exercise significant control over, among other things, the way that Drivers perform their job duties, the routes they take, when the drive, the tools and equipment Drivers are required to use to perform their job duties, Drivers' rate of pay, and Drivers' ability to work for any other businesses. Defendants fix the compensation paid to Drivers. Finally, Drivers perform duties consistent with Defendants' central business. Drivers make deliveries on behalf of Defendants and many Drivers work full-time for Defendants continuously for months, if not years.

5.      These practices willfully violate the FLSA, the Oklahoma Minimum Wage Act (40 Okla. Stat. § 40-197.1, *et seq.*), the Oklahoma Wage Payment Act (40 Okla. Stat. § 165.1, *et seq.*), and the Oklahoma Consumer Protection Act (15 Okla. Stat. § 752, *et seq.*).

6.      Plaintiff and the putative classes and collective members regularly work between eight and fourteen hours per day and sometimes more.

2

7.      Defendants fail to maintain proper records showing all hours worked by Plaintiff and putative classes and collective members.

8.      Plaintiff and putative classes and collective members must also pay work expenses out of pocket, without reimbursement. For example, Plaintiff and putative classes and collective members are not reimbursed for truck lease payments, reefer fuel, maintenance charges, and other expenses incurred by driving for Defendants.

9.      Plaintiff and putative classes and collective members are not payed all amounts owed following the termination of their employment with Defendants. Indeed, most Drivers, like Plaintiff, receive zero pay on their final paycheck for any of the work they performed during that final pay period.

10.     Because of these violations, Plaintiff and putative classes and collective members seeks compensation, damages, penalties, and interest to the full extent provided by the FLSA, the Oklahoma Minimum Wage Act, the Oklahoma Wage Payment Act, and the Oklahoma Consumer Protection Act.

11.     In addition, Hurricane Express, Inc. ("Hurricane") is a federally regulated motor carrier that provides transportation of property in interstate commerce, receiving authorizations to perform such transportation from the U.S. Department of Transportation ("DOT"). In conducting such authorized transportation, Hurricane nominally leases trucking equipment from Drivers, including Plaintiff and putative classes and collective members. Under federal law and regulations, authorized motor carriers like Hurricane may perform authorized transportation in equipment that they do not own only if the equipment is covered by a written lease meeting the requirements set forth in 49 U.S.C. § 14102. Any such written lease must also satisfy the requirements set out in the Code of Federal Regulations

3

at 49 C.F.R. § 376.12. *See also* 49 C.F.R. § 376.11(a) (requiring a written lease meeting the requirements of Section 376.12). Section 376.12 requires that authorized motor carriers include specifically prescribed lease terms in their owner-operator leases, and that the carriers adhere to those terms. 49 C.F.R. § 376.12.

12.    Plaintiffs allege that the standard lease agreement ("Standard Lease Agreement"), whereby Hurricane has nominally leased trucking equipment from the Drivers, does not meet the requirements of Section 376.12. Numerous terms required by Section 376.12 are missing from the Standard Lease Agreement. Other terms in the Standard Lease Agreement conflict with provisions of Section 376.12. In addition, Plaintiffs allege that Hurricane has engaged in a pattern and practice of ignoring its obligations under 49 C.F.R. Part 376, resulting in its breach of its lease agreements with the named Plaintiffs and others similarly situated.

13.    Plaintiffs further allege that Defendants have entered into many agreements, commonly known as "lease-purchase" agreements, which purport to lease a truck to Drivers with the option to buy it after a specified term of years (the "Lease-Purchase Agreement"). Defendants then require the Drivers, including Plaintiff, to enter into the Standard Lease Agreement, which leases the truck and the Drivers' driving services back to, and exclusively to, Hurricane. This arrangement, and the interrelation between the terms of the Lease-Purchase Agreement and Standard Lease Agreement, combine to create violations of the federal leasing regulations and the Oklahoma Consumer Protection Act.

14.    Plaintiff and putative classes and collective members also seeks relief for Defendants' misrepresentations and omissions of material fact regarding the income Drivers would earn, Drivers' status as an independent contractor as opposed to an employee, the

deductions Defendants would make from Drivers' wages, and the nature of the economic opportunity Defendants were offering.

15.     Plaintiff and putative classes and collective members also seek declaratory, equitable, and injunctive relief, including restitution and disgorgement of profits.

16.     Finally, Plaintiff and putative classes and collective members seek reasonable attorneys' fees and costs under the FLSA and Oklahoma statutes.

## JURISDICTION AND VENUE

17.     The causes of action alleged herein arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce, including the FLSA, 49 U.S.C. §§ 13501, 14102, and 14704(a)(1) and (2), and 49 C.F.R. Part 376. Jurisdiction over this matter is granted to this court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (proceedings arising under an Act of Commerce regulating commerce). This court further has supplemental jurisdiction under 28 U.S.C. § 1367 over all other claims asserted in this complaint because those claims are so related to the federal claims subject to original jurisdiction asserted in this action that they form a part of the same case or controversy under Article III of the United States Constitution.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district. Further, one of the agreements at issue in this matter provides that "the forum shall be the United States District Court for the Northern District of Oklahoma."

## PARTIES

19.     Plaintiff Charles Turpin is a citizen of Missouri and an individual residing in the State of Missouri.

20.     Defendant Hurricane Express, Inc. ("Hurricane"), is an Arkansas corporation with its principal place of business in Colcord, Oklahoma. Kaedon Steinert is the President of Hurricane. Both Hurricane and Kaedon Steinert are citizens of Oklahoma.

21.     Hurricane is nominally engaged in the business of interstate and intrastate transport of property and is a federally regulated motor carrier pursuant to the DOT.

22.     Defendant Jonathan, Ltd. is an Arkansas corporation with its principal place of business in Colcord, Oklahoma. Kaedon Steinert is the President and registered agent of Jonathan, Ltd. Jonathan, Ltd. and is a citizen of Oklahoma.

23.     Defendant Jonathan, Ltd. is nominally engaged in the business of leasing trucks to Drivers, including to Plaintiff and class members, for exclusive use in interstate and intrastate transport of freight under the name Hurricane Express, Inc.

24.     Plaintiff performed work for Defendants in Oklahoma.

25.     All Defendants do business or have done business in Oklahoma.

26.     While Hurricane and Defendant Jonathan, Ltd. are separate legal entities by name, the common ownership, control, and corporate interests of the entities are united to such a degree that they should be treated as one entity for purposes of this litigation.

## COMMON FACTUAL ALLEGATIONS

27.     At all relevant times, Defendants were Plaintiff's and putative classes and collective members' "employer" within the meaning of both the FLSA and Oklahoma law.

6

28.     At all relevant times, Plaintiff and putative classes and collective members were employees of Defendants, both individually and jointly.

29.     Defendants were joint employers within the meaning of the FLSA and Oklahoma law.

30.     Defendants both retained the right to fire Plaintiff and putative classes and collective members.

31.     Defendants both supervised and controlled Plaintiff and putative classes and collective members' schedule and condition of employment to a substantial degree.

32.     Defendants determined Plaintiff and putative class and collective members' rate and method of payment.

33.     Defendants each maintained Plaintiff and putative classes and collective members' employment records.

34.     Throughout the time period beginning four years prior to the filing of this lawsuit through the present, Defendant has employed hundreds of drivers and contracted with numerous clients around the country to provide transportation services.

35.     Defendants require prospective Drivers, including Plaintiff, to report to a location in Oklahoma before beginning their employment. While there, prospective Drivers, including Plaintiff, complete orientation. During this time period, Drivers, including Plaintiff, are trained on running what is nominally referred to as an "owner-operator" trucking business for Defendants' benefit and using Defendants' policies and procedures. Drivers, including Plaintiff, pay, or agree to pay, Defendants and/or its affiliates for specified equipment, services, and other fees. Among these equipment fees, Defendants requires Drivers, including Plaintiff, to enter into truck lease agreements with a leasing company,

7

Jonathan, Ltd. On information and belief, Jonathan, Ltd. is a subsidiary of Hurricane. The costs paid by Drivers, including Plaintiff, are in excess of $500.00 within one year of the time Drivers, including Plaintiff, begin operating trucks on behalf of Defendants.

36.     Defendants require prospective Drivers, including Plaintiff, to undergo a physical examination and to submit to drug and alcohol testing. Drivers must agree to continue to submit to drug and alcohol testing throughout their employment.

37.     Defendants require its Drivers, including Plaintiff, to sign a lengthy set of form contracts which mischaracterize each driver as an "independent contractor." The contracts are designed to conceal the fact that Defendants and its Drivers are in an employer-employee relationship. Defendants require Drivers, including Plaintiff, to sign these contracts of adhesion without negotiation as a condition of employment.

38.     Drivers, including Plaintiff, are instructed to choose a truck in Defendants' lot that is available for lease, complete a full truck inspection using Defendants' vehicle inspection form, and turn the inspection sheet into Defendants' Shop for approval. Defendants retain the right to decide which truck to issue to the Drivers.

39.     Defendants also require its Drivers, including Plaintiff, to lease equipment through a form provided by the leasing company, in Plaintiff's case: Jonathan, Ltd. For example, Defendants require its Drivers to lease a Qualcomm so that the Drivers receive work assignments through Hurricane's dispatch office and to communicate with Hurricane management while working. Defendants deduct the costs of these materials from Drivers' compensation on a daily and sometimes monthly basis. In the event a Driver damages or destroys any of Defendant's equipment, the replacement and/or repair cost is to be deducted by Defendants from the Driver's pay.

8

40.     Defendants deduct vehicle damage charges, vehicle lease charges, administrative charges and other equipment and materials charges from its Drivers', including Plaintiff's, pay.

41.     In addition, Defendants require Drivers, including Plaintiff, to have insurance, including, inter alia, workers' compensation insurance. Defendants deduct the cost of insurance from Drivers' compensation despite Okla. Admin. Code § 380:30-1-7(d)(3)'s prohibition against making wage deductions for workers' compensation insurance.

42.     Drivers, including Plaintiff, deliver goods on behalf of Defendants to their clients.

43.     Drivers, including Plaintiff, receive work assignments from Defendants on the Qualcomm device or over the phone. Drivers are required to give two weeks' notice if they want to take time off at home. If Drivers have a load, are passing by their home, and want to stop for up to a few hours, Drivers are still required to notify Defendants of the stop.

44.     Routes provided by Defendants specify the point of origin, the destination, and the deadline for completion. Defendants prohibit Drivers from driving on certain roads.

45.     Drivers, including Plaintiff, for Defendants regularly work long hours in order to get deliveries done on time. Drivers regularly work between eight and fourteen hours in one day and in excess of fifty hours per week as dictated by Defendants' work assignments and assigned routes.

46.     Drivers, including Plaintiff, are paid by the mile. This rate is determined by Defendants and is non-negotiable.

9

47.     Defendants do not track, much less guarantee, any amount of payment per seven-day pay period to satisfy the minimum wage requirements of the FLSA and Oklahoma law.

48.     Defendants' deductions from Drivers' pay reduces the net payment to Drivers below the minimum wage required by the FLSA and Oklahoma law. This is particular prevalent in Drivers' final payment when Drivers almost universally receive zero pay for work performed during their last month of work for Defendants.

49.     Plaintiff's last wage statement reflected a "payment" of zero dollars despite the fact that he worked throughout the time period covered by that wage statement.

50.     Wage statements provided by Defendants do not include the aggregate number of hours worked by Drivers, including Plaintiff. Instead, wage statements list only the number of miles driven wile on route multiplied by the mileage rate, minus deductions.

51.     Defendants exercise significant behavioral and financial control over Drivers, including Plaintiff, establishing that they are in fact employees. Specifically, this control includes the following: Drivers are required to communicate with Hurricane dispatchers through its chosen modes of communication to receive Defendants' work assignments; Drivers are expected to complete deliveries in the time specified and determined by Defendants; Drivers are required to check in with Defendants supervisors at least two times per shift; Drivers are not able to drive for others; Drivers are required to comply with Defendants' policies, procedures and practices or suffer penalties for non-compliance; Drivers are required to prepare and submit required documentation in accordance with Defendants' policies and procedures; Drivers are required to purchase or lease equipment

10

and vehicles from Defendants through Jonathan, Ltd.; and Drivers are required to display Hurricane's signage on the vehicles.

52.     Defendants instruct Drivers, including Plaintiff, where to buy fuel while on route.

53.     Defendants have the authority to terminate Drivers, including Plaintiff, for failing to abide by Defendants' policies and practices.

54.     Drivers, including Plaintiff, are not permitted to drive for other motor carriers unrelated to Defendants.

55.     Over the road truck driving, like that performed by the Drivers, including Plaintiff, is the sort of work that is typically performed under the supervision of an employer. Indeed, the Drivers, including Plaintiff, were closely monitored and supervised by Defendants' dispatchers, managers, and supervisors.

56.     The work performed by the Drivers, including Plaintiff, was typical of the work of over the road truck drivers and did not require any particular skill other than that required for any over the road truck driver.

57.     Defendants, albeit through their various leasing agreements, provided all of the instrumentalities, tools, and work performed by the Drivers, including Plaintiff.

58.     Drivers, including Plaintiff, were expected to work continuously subject to the U.S. Department of Transportation Hours of Service rules. Drivers, including Plaintiff, were not allowed to take time from work without notifying Defendants.

59.     Hurricane's only business was the transportation of cargo for its clients. As such, the work Drivers, including Plaintiff, performed was part of the regular business of Defendants.

60.     By their conduct and the various written policies promulgated and enforced by Defendants, both the Drivers, including Plaintiff, and Defendants understood that they were creating a master and servant relationship whereby Defendants were the master.

61.     The various contracts gave Defendants the right to terminate the relationship without liability effectively at Defendants' will.

62.     Defendants so limited the Drivers, including Plaintiff, that there was no opportunity for Drivers, including Plaintiff, to realize a profit beside that which was tendered by Defendants.

63.     Drivers, including Plaintiff, were not free from control or direction from Defendants over the performance of their work.

64.     Drivers, including Plaintiff, were not customarily engaged in an independently established trade, occupation, profession, or business. Rather, their work was wholly provided, directed, and compensated by Defendants.

65.     Drivers, including Plaintiff, did not have an opportunity to utilize their own managerial skill to increase their profits from working as Drivers for Defendants. Rather, Defendants controlled Plaintiff and putative classes and collective members' opportunity to make money.

66.     Drivers', including Plaintiff's, work was provided at locations dictated by Defendants. The nature of that work was to travel. However, the Drivers, including Plaintiff, started their work at orientation, continued their work for required maintenance, and were required to end their work at Defendants' shop location in Colcord, Oklahoma.

67.     Drivers, including Plaintiff, were required to pay for much of the equipment necessary to complete their work. Drivers are responsible for the cost of maintenance for

12

the vehicles and are required to seek approval before making any repairs to the leased vehicles.

68.     Defendants do not allow Drivers to exchange assignments amongst themselves or to subcontract the delivery to another person or entity without approval from Defendants. By the terms of the lease agreement, Defendants also prohibits Drivers from using their leased vehicles for personal uses or for other transportation companies.

69.     Defendants misrepresent to Drivers, including Plaintiff, that they will be treated as independent contractors. This misrepresentation caused damage in that it induced Plaintiff and putative classes and collective members to accept unlawful wage deductions, take on business expenses typically paid by employers, and take on additional tax liability from the transfer of the "employer's share" of FICA and Medicare taxes to the Drivers. Such "employer's share" of FICA and Medicare taxes are generally a liability the employer and not the employee.

70.     Defendants' unlawful conduct has been widespread, repeated, and consistent throughout its operations in Oklahoma and the United States. Defendants knew or should have known that is policies and practices have been unlawful and unfair.

71.     Defendants' conduct is willful, carried out in bad faith, and has caused significant damages to its employees in an amount to be determined at trial.

72.     As a Driver, Plaintiff and each class member entered into multiple contracts with Defendants.

73.     The first contract Plaintiff and class members entered into was with Defendant Jonathan, Ltd., titled "Rental Agreement." Pursuant to this agreement, Plaintiff and class members nominally leased a truck from Defendant Jonathan, Ltd, though that truck could

only be used to perform work for Hurricane. A model of the Rental Agreement entered into by and between Defendant Jonathan, Ltd. and Plaintiff, which is typical of each class member's Rental Agreement with Defendant Jonathan, Ltd., is attached hereto as **Exhibit 1** and is incorporated herein by reference.

74.     Plaintiff and class members then entered into a written agreement with Hurricane, for the hauling of cargo on behalf of Hurricane, by Plaintiff and class members ("Driver Agreement"). A model of the Driver Agreement entered into by and between Hurricane and Plaintiff, which is typical of each class member's Driver Agreement with Hurricane, is attached hereto as **Exhibit 2** and is incorporated herein by reference.

75.     Pursuant to the Driver Agreement, Plaintiff and Class members, on behalf of and at the direction of Hurricane, transport and deliver property from pick-up points to points of delivery. Plaintiff and class members are generally compensated based upon a mileage rate schedule. Plaintiff and class members receive their sole payment in the form of "settlement checks" issued to Plaintiff and Class members by Defendants, usually on a weekly basis.

76.     The terms and conditions of both the Rental Agreement and the Driver Agreement are regulated under 49 C.F.R. § 376.1 *et seq.* (the "Truth in Leasing Regulations"), because the agreements constitute a "lease" within the meaning of 49 C.F.R. § 376.2(e).

77.     The Rental Agreement and Driver Agreement do not meet lease requirements set forth in 49 C.F.R. § 376.12.

78.     The Truth in Leasing Regulations do not permit forced purchases as a condition of a lease agreement. But, as part of the Rental Agreement, and for an additional daily fee, each Plaintiff and class member was required to rent from Defendants, with the

option to eventually purchase, an Auxiliary Power Unit ("APU") for use in the truck leased from Defendants. As a result of the forced purchase of an APU, Plaintiff and class members incurred charges they would not have otherwise incurred.

79.     As part of the Rental Agreement, Plaintiff and class members were forced to pay $0.15 per mile as a nonrefundable charge for depreciation, tires, and scheduled preventative maintenance performed at Defendants' shop. As a result of the forced payment of this $0.15 per mile charge, Plaintiff and class members incurred charges they would not have otherwise incurred. Upon information and belief, Plaintiff and class members were frequently, if not uniformly, denied access to the services this charge was alleged by Defendants to be used for. Additionally, Plaintiff and class members were forced to incur additional expenses in obtaining maintenance services on their own through Defendants' chosen vendor.

80.     The Truth in Leasing Regulations require that the lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of settlement (i.e., charge-back items); however, while the Driver Agreement requires Plaintiff and class members to obtain and maintain their own, separate, workers' compensation insurance, Defendants deduct charges from Plaintiff's and class members' pay-checks for workers' compensation coverage regardless.

81.     In connection with the Driver Agreement, Defendants also required Plaintiff and class members to sign a separate document in which Defendants required Plaintiff and class members to acknowledge that Defendants would not be providing them with workers' compensation insurance. A model of the Workers' Compensation Waiver entered into by and between Defendants and Plaintiff, which is typical of each class member's Workers'

15

Compensation Waiver with Defendants, is attached hereto as **Exhibit 3** and is incorporated

herein by reference.

### COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

82.     Plaintiff consents to join this action as a party plaintiff as illustrated by his

signed consent to join form attached hereto as **Exhibit 4**.

83.     Plaintiff brings Count 1, the FLSA claim, as an "opt-in" collective action

pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective:

> All current and former Drivers who were employed by Defendants to provide
> transportation services within the United States at any time during the period
> beginning three years prior to the filing of this Complaint, and continuing
> through the present.

84.     Plaintiff's claims for violations of the FLSA may be brought and maintained as

in "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA

claims are similar to the claims of the Collective members.

85.     The Collective members are similarly situated, as they have substantially

similar job duties and requirements and are subject to a common policy, practice, or plan

that misclassifies them as exempt independent contractors, and thus requires them to

perform work without compensation in violation of the FLSA.

86.     Plaintiff is representative of the Collective members and is acting on behalf of

their interests, as well as Plaintiff's own interests, in bringing this action.

87.     Plaintiff will fairly and adequately represent and protect the interests of

Collective members. Plaintiff has retained counsel competent and experienced in

employment class action and collective action litigation.

88.     The similarly situated Collective members are known to Defendants, are

readily identifiable, and may be located through Defendants' records. These similarly

situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff brings Counts 2–5 as a class action pursuant to Fed. R. Civ. P. 23.

90.     First, Plaintiff seeks to maintain his Oklahoma state law claims in Counts 2–4 as a class action pursuant to Fed. R. Civ. P. 23 for the following class ("First Class"):

> All current and former Drivers who entered into an agreement with Defendants to provide transportation services as Drivers at any time during the period beginning three years prior to the filing of this action and continuing through the present.

91.     Second, Plaintiff seeks to maintain his federal Truth in Leasing claim in Count 5 as a class action pursuant to Fed. R. Civ. Proc. 23 for the following class ("Second Class"):

> All current and former Drivers who entered into an agreement with Defendants to provide transportation services as Drivers at any time during the period beginning four years prior to the filing of this action and continuing through the present.

92.     Plaintiff seeks to serve as a Class Representative for the above-defined classes.

93.     Plaintiff's Oklahoma state law and Truth in Leasing claims have been brought and may properly be maintained as a class action under Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

94.     Plaintiff's claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. Proc. 23.

17

95.     Both classes are believed to number in the hundreds of persons.  As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through direct mail.

96.     There are questions of fact and law common to the Clases that, under Federal law and Oklahoma state law, predominate over any questions affecting only individual members.  The questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

a)  Whether Defendants, through their policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from Oklahoma minimum wage protections, fail to pay members of the First Class the minimum wage they are owed in violation of 40 Okla. Stat. § 40-197.2 (2014);

b)  Whether Defendants fail to compensate members of the First Class for all hours worked, in violation of Oklahoma law;

c)  Whether Defendants fail to timely pay members of the First Class for all wages owing upon termination of employment in violation of 40 Okla. Stat. § 40-165.3 (2014);

d)  Whether Defendants violated the Oklahoma Consumer Protection Act by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the fact that most drivers receive no pay for work performed during their last month of employment with Defendants;

18

e) Whether the Rental Agreement or Driving Agreement, as drafted by Defendants and signed by Plaintiff and class members, violates federal Truth in Leasing regulations in requiring the forced purchase of an auxiliary power unit from Defendants;

f) Whether the Rental Agreement or Driving Agreement, as drafted by Defendants and signed by Plaintiff and class members, violates federal Truth in Leasing Regulations in requiring the forced purchase of maintenance services from Defendants;

g) Whether the Rental Agreement or Driving Agreement, as drafted by Defendants and signed by Plaintiff and class members, violates federal Truth in Leasing Regulations in failing to contain required insurance disclosures;

h) Whether the Rental Agreement or Driving Agreement, as drafted by Defendants and signed by Plaintiff and class members, violates federal Truth in Leasing Regulations in failing to provide computation of charge-backs for workers' compensation insurance.

i) The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the classes as alleged herein

97.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

98.     Plaintiff's claims under Federal law and Oklahoma state law are typical of those of the classes in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar practices as Plaintiff.

99.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the classes.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Classes' members to protect their interests.

100.    Plaintiff is an adequate representative of the classes because he is a member of the classes and his interests do not conflict with the interests of the members of the classes he seeks to represent.   The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel.  Counsel are experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

101.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

20

COUNT I

Violation of the Fair Labor Standards Act of 1938

(Brought Against Defendants by Plaintiffs Individually and
on Behalf of All Others Similarly Situated)

102.    Plaintiff re-alleges and incorporates the above paragraphs as though fully set
forth herein.

103.    At all times material herein, Plaintiff has been entitled to the rights,
protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

104.    The FLSA regulates, among other things, the payment of minimum wages by
employers whose employees are engaged in interstate commerce, or engaged in the
production of goods for commerce, or employed in an enterprise engaged in commerce or in
the production of goods for commerce. 29 U.S.C. § 207(a)(1).

105.    Defendants are, and at all time relevant have been, subject to the minimum
wage requirements of the FLSA because they are an "employer" as that term is defined at 29
U.S.C. § 203.

106.    Defendants violated the FLSA by failing to track and pay all hours worked by
its Drivers which has resulted in an underpayment of minimum wages.

107.    In addition, or in the alternative, Defendants violated 29 U.S.C. § 206 by
deducting costs for expenses, tools and equipment from Plaintiff and class members' wages
so as to cause their wages to at times fall below the federally mandated minimum wage rate.

108.    Plaintiffs and all similarly situated employees are victims of a common
compensation policy.

109.    Plaintiffs and all similarly situated employees are entitled to damages equal to
the mandated minimum wage pay within the three years preceding the filing of this

21

Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard in its violation of the requirements of the FLSA.

110.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA.  As a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith in failing to pay its employees overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

111.    As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## COUNT 2

Violation of the Oklahoma Minimum Wage Act, 40 Okla. Stat. § 40-197.1, *et seq.*

(Brought Against Defendants by Plaintiffs Individually and
on Behalf of All Others Similarly Situated in the First Class)

112.    Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

113.    Defendants are an "employer" as defined by 40 Okla. Stat. § 40-197.4(d).

114.    Defendants did not pay minimum wage as required by the FLSA.

22

115.    Plaintiff and the class he seeks to represent were all employed by Defendants and were not of a class of employees exempted from the Oklahoma Minimum Wage Act by operation of 40 Okla. Stat. § 40-197.4(e).

116.    Defendants intentionally and willfully pay Plaintiff and putative class members below minimum wage by opting to pay Drivers at a rate determined per mile driven on route. After deducting costs for expenses, tools and equipment from Plaintiff and class members' wages, Driver compensation is lowered substantially. After deductions, Drivers often make less than the state-mandated minimum wage for each hour they work.

117.    As a result of these violations of the Oklahoma Minimum Wage Act, Defendants are liable to Plaintiff and the class members "for double the full amount of such wages, less any amount actually paid to such employee by the employer, and for court costs, and such reasonable attorney fees as may be allowed by the court, which in no case shall be less than One Hundred Dollars ($100.00)." 40 Okla. Stat. § 40-197.9.

COUNT 3

Violation of the Oklahoma Wage Payment Act, 40 Okla. Stat. § 165.1, *et seq.*

(Brought Against Defendants by Plaintiffs Individually and
on Behalf of All Others Similarly Situated in the First Class)

118.    Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

119.    Defendants are an "employer" as defined by 40 Okla. Stat. § 40-165.1(1).

120.    Plaintiff and the class he seeks to represent were all "employees" of Defendants as defined by 40 Okla. Stat. § 40-165.1(2).

121.    Upon Plaintiff's termination of employment with Defendants, Defendants processed so many "deductions" from his final pay that he received zero payments for the

work he performed during his last month of employment with Defendants. At least the minimum wage was due for the hours worked during this time period. Defendants' failure to pay these wages violated 40 Okla. Stat. § 40-165.3(A).

122.    The wages owed to Plaintiff and the class he seeks to represent were not subject to a bona fide disagreement as described in 40 Okla. Stat. § 40-165.1(6).

123.    As a result of these violations of the Oklahoma Wage Payment Act, Defendants are liable to Plaintiff and the class members "liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the employer willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller." 40 Okla. Stat. § 40-165.3(B).

COUNT 4

Deceptive and Unfair Trade Practices<br>Oklahoma Consumer Protection Act, 15 Okla. Stat. § 752, <em>et seq.</em>

(Brought Against Defendants by Plaintiffs Individually and<br>on Behalf of All Others Similarly Situated in the First Class)

124.    Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

125.    The Oklahoma Consumer Protection Act (OCPA), 15 Okla. Stat. § 752, *et seq.*, bars deceptive and unfair trade practices in connection with "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."

24

126.    Plaintiff and the class he seeks to represent are each a "person" as defined by the Oklahoma Consumer Protection Act. *See* 15 Okla. Stat. §15-752(1).

127.    "Consumer transaction" means the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented. 15 Okla. Stat. § 15-752(2).

128.    "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral. 15 Okla. Stat. § 15-752(13).

129.    "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. 15 Okla. Stat. § 15-752(14).

130.    Drivers, including Plaintiff, while physically present in Oklahoma purchased and/or leased, equipment and services from Defendants and/or their affiliates to enable them to start an "owner operator" business (the "Driving Opportunity") providing services to Defendants.

131.    In selling and/or leasing the Driving Opportunity, Defendants represented to Drivers, including Plaintiff, while they were physically present in Oklahoma at Defendant's headquarters, that they would be independent contractors running their own business, not employees. This representation was material to Drivers, including Plaintiff. As noted above, Defendants' representations that Drivers would be independent contractors or independent

business owners was false and/or misleading. Defendants in fact treated Drivers, including Plaintiff, as employees.

132.    Defendants also represented and advertised to Drivers, including Plaintiff, that if they accepted Defendants' Driving Opportunity they would earn positive amounts of money.

133.    The representations made in the preceding two paragraphs were false and/or misleading. Those representations were made in order to induce and mislead Drivers into purchasing and/or leasing the Driving Opportunity and sign an operating agreement nominally with Hurricane and a truck lease nominally with Jonathan, Ltd.

134.    Defendants knew but concealed the material facts from Drivers, including Plaintiff, that 1) the turnover rates of in the Driving Opportunity was extremely high, 2) that most if not all Drivers that purchased the Driving Opportunity failed within a short period of time, 3) that the Driving Opportunity did not offer any prospect of any real sustained economic opportunity, 4) that Defendants did not offer one of the best compensation packages in the industry, 5) that the Driving Opportunity did not offer a driving career or one that was rewarding from an earnings perspective or results that were truly rewarding.

135.    Defendants conduct as described herein constituted both a Deceptive Trade Practice and an Unfair Trade Practice as defined by the Oklahoma Consumer Protection Act.

136.    In the conduct described above, Defendants acted intentionally with malice and/or with reckless disregard toward the rights of Plaintiff and the putative class entitling Plaintiff and the putative class to an award of punitive damages under applicable law.

137.    Pursuant to 15 Okla. Stat. § 761.1, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary

damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative class.

138.    On January 30, 2020, claims similar to those alleged herein, based on similar facts, were certified under Fed. R. Civ. P. 23 to proceed as a class action against a different trucking company in *Huddleston v. John Christner Trucking, LLC*, Case No. 4:17-cv-00549, 2020 WL 489181 (N.D. Okla. Jan. 30, 2020) (Frizzell, D. J.). Accordingly, this claim is not asserted in bad faith, is well grounded in fact, and is warranted by existing law.

COUNT 5

Violation of The Truth In Leasing Regulations, 49 C.F.R. § 376.12

(Brought Against Defendants by Plaintiffs Individually and
on Behalf of All Others Similarly Situated in the Second Class)

139.    Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

140.    49 C.F.R. § 376.12(i) requires that "[t]he lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."

141.    Defendants fail to provide this statement in either the Rental Agreement or the Driver Agreement.

142.    The Rental Agreement required each Plaintiff and class member to pay "[a] $10.00 daily TriPac usage fee" to rent an Auxiliary Power Unit ("APU") from Defendants. Drivers were not allowed to supply their own APU. At the end of the lease term, Drivers could purchase the APU for $6,000. This resulted in the total cost for the APU being over $10,000. An APU could have been purchased by Drivers on the open market and installed for

27

approximately $7,000. Accordingly, this provision cost each Driver approximately $3,000 in unnecessary expense.

143.    The Rental Agreement required each Plaintiff and class member to pay "$0.15 per mile (all paid miles) as a nonrefundable charge for depreciation, tires scheduled preventative maintenance performed at [Defendants'] shop."

144.    Plaintiff and class members would not have had to incur these charges had Defendants not required they do so as part of the Rental Agreement.

145.    As a direct and proximate cause of Defendants' violations of 49 C.F.R. § 376.12(h)–(j), Plaintiff and class members have suffered financial injury, and Defendants have been unjustly enriched.

146.    C.F.R. § 376.12(j)(2) states:

> If the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier, **the lease shall specify that the authorized carrier will provide the lessor with a copy of each policy upon the request of the lessor**. Also, where the lessor purchases such insurance in this manner, **the lease shall specify that the authorized carrier will provide the lessor with a certificate of insurance for each such policy**. Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable.

(Emphasis added).

147.    The Driver Agreement required each Plaintiff and class member to "purchase Occupational Accident coverage from [Defendants] at the rate of $4.55 per day...."

148.    The Rental Agreement required Plaintiff and class members to pay "[a] $15.00 daily fee, which cover Truck physical damage insurance and the annual 2290 tax."

149.    Defendants failed to provide a recitation in the lease that they would provide Plaintiff and class members with a copy of these policies, nor did Defendants state in the lease that they would provide class members with a certificate of insurance for each such policy.

150.    Plaintiff and class members have suffered substantial damages as a direct and proximate result of Defendants' illegal conduct, including but not limited to the overpayment for occupational and vehicle insurance to Defendants, and Defendants have been unjustly enriched as a result of Defendants' illegal conduct.

151.    49 C.F.R. § 376.12(h) requires that "[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed."

152.    The Driver Agreement requires that Plaintiff and class members "obtain and maintain such workers compensation insurance ... [and] agree to indemnify and hold [Defendants] harmless from any claim that [Defendants] should provide, or should have provided workers compensation insurance coverage or benefits...." **Exhibit 2**.

153.    Despite the Driver Agreement requiring Plaintiff and class members to procure and maintain workers' compensation benefits on their own behalf, Defendants withdraw charges from Plaintiff and class members pay-checks for "workers' compensation coverage."

154.    The Driver Agreement each Plaintiff and class member signed fails to recite how the amount of the workers' compensation premiums/charges are to be computed.

155.    Defendants unlawfully made deductions from Plaintiffs' and class members' compensation for workers' compensation premiums/charges.

156.    As a direct and proximate result of Defendants' violations of 49 C.F.R. § 376.12(h), Plaintiff and class members have suffered financial injury and Defendants have been unjustly enriched.

157.    The relationship between owner-operators and regulated carriers is regulated by the DOT under 49 U.S.C. § 14102 *et seq.* and 49 C.F.R. Part 376. A person harmed by an authorized carrier's failure to comply with the federal leasing regulations may bring an action seeking injunctive relief and damages pursuant to 49 U.S.C. § 14704(a)(1) and (2) and may recover attorneys' fees under 49 U.S.C. § 14704(e). During all times material to this case, Defendants are and have been an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a).

158.    Plaintiff seeks recovery of all money and all other valuable consideration paid as a result of Defendants' violation of the Truth in Leasing Regulations, actual damages, exemplary damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative class.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff demands a jury on all issues so triable and prays for relief as follows:

        a.   Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by federal and Oklahoma law to remedy the unlawful acts and omissions described herein;

b. For a declaratory judgment that Defendants have violated federal Oklahoma law and public policy as alleged herein;

c. For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing in the future those violations of law alleged herein;

d. For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

e. For an order awarding Plaintiff and the class and collective members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money and other valuable consideration paid for the Driving Opportunity, actual damages, punitive damages, and all other sums of money owed to Plaintiff and class members, together with interest on these amounts, according to proof;

f. For an award of reasonable attorneys' fees as provided by the FLSA, the Oklahoma Minimum Wage Act, the Oklahoma Wage Payment Act, the Oklahoma Consumer Protection Act, and for remedying violations of the federal Truth in Leasing regulations.

g. For all costs of suit;

h. Or interest on any damages and/or penalties awarded, as provided by applicable law; and

i. For such other and further relief as this Court deems just and proper.

Dated: October 23, 2020            Respectfully submitted,

**TTB LAW**

_____

Eugene Bertman, OBA # 19406
219 E. Main St.
Norman, OK  73069
Tel:    405-364-8300
Fax:    405-364-7059
Email: gene.bertman@ttsblaw.com

**LEAR WERTS LLP**

/s/ Todd C. Werts_____
Todd C. Werts, MO Bar No. 53288,
_pending pro hac vice_
103 Ripley Street
Columbia, Missouri 65201
Tel:    573-875-1991
Fax:    573-875-1985
Email:  werts@learwerts.com

**ROBERTS, WOOTEN & ZIMMER, LLC**

Charles R. Wooten, Mo. Bar No. 51250
_pending pro hac vice_
10438 Business 21
Hillsboro, MO  63050
T: 636-797-2693
F: 636-789-4205
E: charleswooten@rwzlaw.com


_Attorneys for Plaintiff_

**EXHIBIT**

**1**

Jonathan Ltd
Rental Agreement

THIS RENTAL AGREEMENT ("Agreement") is made and entered into between Jonathan Ltd ("Owner"); and Charles Turpin ("Renter").

For valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Owner is the owner of a 2017 truck/tractor with a vehicle identification number (VIN) of 1XPBD49X2HD368753 (the "Truck").

1.      Subject to the provisions and conditions of this Agreement, beginning on the Effective Date, Owner hereby leases to Renter the Truck on the terms stated herein for 608 days (the "Term"). During the Term of this Agreement, Renter shall have exclusive possession of the Truck subject to the terms of this Agreement, and shall assume complete responsibility for the operation of the equipment for the Term of this Agreement. Owner shall pay Renter a $2,300.00 lease completion bonus at the end of the Term.

2.      Renter shall pay owner a daily rental of $55.00 (the "Rental") during the Term of this Agreement. The Rental shall be paid to Owner periodically, as agreed to by Owner and Renter, subject to any set-offs related to monies owed to Owner by Renter. Renter shall further pay:

    (a)      A $10.00 daily TriPac usage fee;.

        (i)      Owner will provide an operational TriPac APU and will pay for all necessary maintenance and repairs, to be determined in Owner's sole discretion. Owner will determine the repair facility when repairs are necessary. At the completion of the Term, Renter shall be entitled to purchase the TriPac APU for $6,000 so long as the TriPac APU is the original TriPac installed at the beginning of the Term. If the TriPac APU is replaced during the Term of this Agreement, the sum of $1,500 will be added to the Purchase Price for each year the TriPac APU is newer than the Truck. If the Renter declines to purchase the TriPac APU, then the TriPac APU mounted on the truck will remain the property of Owner and will be removed prior to sale.

    (b)      A $15.00 daily fee, which covers Truck physical damage insurance and the annual 2290 tax;

    (c)      $0.15 per mile (all paid miles) as a nonrefundable charge for depreciation, tires scheduled preventative maintenance (see schedule) performed at Owner's shop. Under no circumstances is this charge refundable;

3.      Renter may not assign the Agreement or sublease the Truck. Notwithstanding anything to the contrary herein, Renter shall, at all times, operate the Truck under the operating authority of Hurricane Express, Inc. No person, other than Renter, may use the Truck without the express written consent of Owner.

4.      Renter shall inspect said Truck and shall determine that the requirements and standards of the U.S. Department of Transportation (DOT) and the Federal Motor Carrier Safety Authority (FMCSA) have been met at the time of the execution of this Agreement. Renter shall, at all times, maintain the Truck in excellent operating condition, normal wear and tear excepted. Renter shall have the Truck regularly serviced by a qualified mechanic approved by Owner. All additions, attachments, accessories, and repairs at any time made to or placed upon the Truck and shall become part of the Truck shall be the sole property of Owner. Notwithstanding any damage to the Truck, the Rental shall continue to be paid to Owner.

5.      In addition to the Rental, Renter shall pay all, without limitation, expenses associated with the operation of the Truck. Such expenses shall include, but shall not be limited to, the following all state and federal taxes, all road use taxes, wages for employees, fuel expenses, repairs and maintenance expenses (ordinary or extraordinary), licenses, tags, traffic tickets, insurance premiums, and any expenses associated with any damage to any item hauled by the Renter with the Truck. Renter shall be responsible for the first $5,000.00 of any expenses incurred as a result of any physical damage to the Truck. Renter shall also be responsible for the first $5,000.00 of any liability claims. On a periodic basis, Owner shall provide Renter with a settlement statement for all expenses paid by Owner attributable to the Truck. Renter shall reimburse Owner for any expenses incurred by Owner as a result of the operation of the Truck.

INITIALS: _C.T._

6.      Renter shall only allow a qualified person to drive the Truck, who must be approved by Owner before such person may operate the Truck. If Owner shall be required to provide a person to drive the Truck, the Renter's responsibilities to pay the Rental and otherwise perform his obligations hereunder shall not be affected thereby. Renter shall pay any expenses associated with Owner providing a person to drive the Truck.

7.      If any party shall breach or terminate this Agreement, Renter shall return the Truck to Owner in excellent condition. Upon return, the Truck shall (1) not have any cracked windshields, (2) not have any body damage, (3) not have any bent or dented bumpers, (4) not have any bent or badly scuffed rims, (5) not have any holes or tears in the seats or to any other part of the interior, (6) either have original equipment tires or have tires that were furnished by Owner. Said tires must not have any extraordinary damage such as cuts, holes, missing tread or damaged sidewalls. Additionally, in the event this Agreement is breached or terminated by any party, Renter shall return to 5624 Highway 412, Colcord, Oklahoma (the "Location") any and all personal property, including cargo, equipment, and trailers, received from or on behalf of any person or business entity doing business at the Location.

8.      In the event that the Owner shall breach this Agreement, Renter's exclusive remedy shall be limited to an award of damages in the amount of one daily Rental payment. This provision should be construed as a limitation of remedies provision and not as a penalty or a liquidated damages provision.

9.      At no time during or after the Term of this Agreement shall the Renter have any property interest in the Truck of any nature whatsoever other than as specified herein.

10.     Each provision of this Agreement is severable from all other provisions. If any provision of the Agreement is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary to render it valid and enforceable. In the event that any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable for any reason, all remaining provisions shall remain in full force and effect.

11.     This Agreement can be amended or modified only by an instrument in writing signed by all the parties hereto.

12.     Owner may terminate this Agreement at any time without cause in its sole discretion. In the event this Agreement is breached or terminated by any party, Renter shall return to 5624 Highway 412, Colcord, Oklahoma the Truck and any and all personal property belonging to Owner.

13.     Either party's failure to insist upon strict performance of any provision of this Agreement shall not be construed as a waiver of that or any other of its rights hereunder at any later date or time.

14.     As a specific inducement to the parties to enter into this Agreement, the parties agree that this Agreement shall be subject to and governed by the laws of the State of Oklahoma. Any litigation shall be heard in the courts of Delaware County, Oklahoma, except in the case of federal litigation, and in that case the forum shall be the United States District Court for the Northern District of Oklahoma.

15.     This Agreement contains the entire agreement of all parties and no other oral or written agreement shall be binding upon the parties hereto. The parties acknowledge that they have neither been influenced to enter into this transaction by any party, nor relied on any representation of any party except for the representations set forth in this Agreement. This Agreement supersedes all prior agreements, contracts, and understandings of any kind, either oral or written.

EXECUTED, this _26th_ day of _September_ 20_17_ (the "Effective Date").

OWNER                                      RENTER

Jonathan Ltd                               _Charles Turpin_

By:_____              Charles Turpin

Its: VP of Operations

2923686.1:424194:00700                    - 2 -                    INITIALS: _CT_

**EXHIBIT 2**

*Hurricane Express, Inc*

THIS CONTRACT, made and entered into this 16ᵗʰ day of _September_, 20 17 by and between  Hurricane Express, Inc,  hereinafter  called  "Contractor"  and _Charles Turpin_ of _10056 Silver Springs Rd_ (address), _Bonne Terre MO 63628_ (city, state, zip), hereinafter called "Lease Operator."

WHEREAS, Contractor is the registrant for certain motor vehicle equipment, authorized by the Federal Motor Carrier Safety Administration by Permit No. MC-256502, and is engaged in the business of providing delivery services.

WHEREAS, Lease Operator is a skilled operator of trucks for the hauling of cargo pursuant to the regulations of the Department of Transportation (DOT) and the Federal Motor Carrier Safety Administration (FCMSA).

WHEREAS, Lease Operator desires to contract as an independent contractor and not as an employee to perform the services set forth herein, and Lease Operator has the equipment, personnel, and permits necessary for the purposes set forth herein.

NOW THEREFORE, in consideration of the mutual promises and covenants herein, it is agreed that:

1.      The purpose of this Contract is to provide for the transport of cargo or other freight in exchange for the compensation provided herein. Lease Operator represents and warrants it has and will maintain, at its sole expense, the truck(s), equipment, licenses, and permits necessary to accomplish such purpose.

2.      Contractor agrees to pay Lease Operator for successful completion of the purposes of this Contract in accordance with the Mileage Rate Schedule. Lease Operator acknowledges receipt of said Mileage Rate Schedule.

3.      To the extent said costs are not otherwise provided for herein, Lease Operator shall be charged the following non-refundable fees (the "Operating Expenses:) by Contractor:

(a)      $5.00 per day fee for annual license fees (base plate);

(b)      Lease Operator shall purchase Occupational Accident coverage from Contractor at the rate of $4.55 per day, or otherwise provide Contractor with proof of similar insurance with the same liability limits and coverage as that Occupational Accident insurance coverage is offered by Contractor;

(i)      Lease Operator agrees to obtain and maintain such workers compensation insurance or alternative medical insurance, as may be required by law. Lease Operator agrees to indemnify and hold Contractor harmless from any claim that Contractor should provide, or should have provided workers compensation insurance coverage or benefits because of the application of this Contract, and the terms of this provision are continuing in nature and shall survive the expiration of the term of this Contract; provided, however, if Lease Operator resides in North Carolina (NC) or Colorado (CO), or is not otherwise eligible for Occupational Accident coverage, Lease Operator shall provide proof of workers' compensation coverage or shall purchase said coverage from Contractor at a rate of $16.44 per day for NC and $13.81 per day for CO.

(c)      $0.01 per mile (all paid miles) for IFTA taxes and state mileage taxes.

4.      Contractor may deduct the Operating Expenses, and any other amounts owed to Contractor by Lease Operator, from compensation paid to Lease Operator.

INITIALS: _C.T._

2923683.2:424194:00700                                    - 1 -

5.      This Contract does not constitute and shall not be construed as constituting or creating an employee/employer relationship between Contractor and Lease Operator. Contractor may outline the required results that are to be accomplished by Lease Operator, but Contractor shall not direct the manner in which Contractor obtains said results. Lease Operator warrants to Contractor that it will pay self-employment tax, social security, or any other tax required to pay as an independent contractor. Lease Operator further agrees to indemnify Contractor from any loss or expense sustained by the Contractor as a result of Lease Operator failing to pay such taxes or in the event any governmental taxing agency makes claims against Contractor for failure to withhold, contribute, or pay any tax for any reason. Lease Operator further agrees that he or she will declare him or herself self-employed on applicable tax returns with respect to revenues received from Contractor. Lease Operator unconditionally waives, releases, and forever relinquishes any and all claims, rights or demands of any nature whatsoever against Contractor arising out of any unemployment, worker's compensation, or other statute or system which could in any way drive from or arise out of Lease Operator's performance of any work hereunder.

6.      ~~The term of this Contract shall be 30 days. This Contract shall automatically renew each~~ 30-day period unless either party notifies the other in writing no less than one day before the end of the prior term. Notwithstanding anything herein to the contrary, this Contract may be terminated by Contractor at any time in any manner without cause in its sole discretion.

7.      Notwithstanding anything to the contrary herein, Lease Operator agrees and understands that it is personally responsible to Contractor for breakage or loss of merchandise or equipment, cargo shortage or damage, or any other damage it causes to Contractor's property or the property of a third party, and that any amounts found due and owing to Contractor in Contractor's discretion, as set forth herein, may be withheld from any compensation owed by Contractor to Lease Operator.

8.      All equipment and machinery which are subject to this Agreement shall at all times be maintained and operated by Lease Operator in a safe manner, and will be kept in such condition at all times to meet all safety rules and regulations and all other maintenance and operational rules and regulations. Lease Operator shall be responsible for determining the details and means of operating the equipment. Lease Operator agrees to indemnify, defend, and hold Contractor harmless from any and all liabilities which Contractor may incur as a result of any acts or failures to act, or negligence on the part of Lease Operator and this obligation on the part of Lease Operator shall survive the expiration of the term of this Contract.

9.      In the event this Agreement is breached or terminated by any party, Lease Operator shall return to 5624 Highway 412, Colcord, Oklahoma (the "Location") any and all personal property, including cargo, equipment, and trailers, received from or on behalf of any person or business entity doing business at the Location.

10.     The laws of the State of Oklahoma, without regard to its conflict of laws provisions, shall govern the interpretation and construction of this Contract.

11.     Lease Operator agrees to be responsible for all attorney's fees and costs incurred by Contractor as a consequence of Lease Operator's non-performance or violation of any of the provisions of this Contract, including without limitation those fees and costs incurred in connection with legal action taken to compel performance or recover damage from Lease Operator.

Hurricane Express, Inc

_Charles Turpin_
Lease Operator

By: _____

Its: VP of Operations

INITIALS: _CT._

2923683.2:424194:00700                         - 2 -

**EXHIBIT**

**3**

# HURRICANE EXPRESS, INC.

5624 Highway 412
Colcord, OK 74338
Phone: (918) 262-6025
Fax:  (918) 262-6036

I understand that Hurricane Express is not my employer and does not maintain any workers' compensation insurance on me.  I understand that if I want this type of coverage it is my responsibility to obtain it.

I understand that it is my responsibility to make sure that I have all necessary permits before taking the truck out of the yard.

I understand that as part of my duties and responsibilities as a driver for Hurricane Express that I must perform a Pretrip and Post-trip inspection of both the tractor and trailer everyday.  I understand that any damage that occurs because of my negligence will be my responsibility.  I also understand that I will be financially responsible for the cost of all repairs.

I understand that drivers are responsible for the safety of their loads and for any damage to the product up to $5000 if unit failure occurs or if I am responsible for an accident.  Otherwise, drivers are responsible for their loads and/or damage to the product at value of load.  I understand that Hurricane Express does not supply load locks.

I understand that most produce loads are normally run at 36 degrees continuous.  If I am told a different temperature then I should call the broker of the load to verify what temperature to run the unit.


Charles Turpin

**Driver's Signature**

9/25/17

**Date**

DocuSign Envelope ID: 0B714164-29A1-4311-89BA-A6DADFCE7BAF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| CHARLES TURPIN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. |
| v. | JURY TRIAL DEMANDED |
| HURRICANE EXPRESS, INC. and JONATHAN, LTD., | CLASS & COLLECTIVE ACTION |
| Defendants. | |

### PLAINTIFF CONSENT FORM

I WANT TO JOIN THE ABOVE DESCRIBED LAWSUIT seeking unpaid minimum wages against the above-named defendants. I HEREBY CONSENT to be a party plaintiff in the foregoing action seeking minimum wages under the FLSA. For purposes of this lawsuit, I choose to be represented by Todd C. Werts of Lear Werts LLP, Charlie Wooten, of Roberts, Wooten & Zimmer, LLC, and any other attorneys with whom they may associate.

DocuSigned by:

*Charles Turpin*

5BCA3A9944E6494

Charles Turpin