IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHARLES TURPIN, individually and on
behalf of all others similarly situated,

          Plaintiffs,

v.

HURRICANE EXPRESS, INC. and
JONATHAN, LTD.,

      Defendants.

Case No.  4:20-cv-00544-GKF-SH

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT AND SUGGESTIONS IN SUPPORT

Following the Court's preliminary approval of the parties' voluntary settlement agreement, the settlement administrator initiated the notice process, and class members were given the opportunity to opt out or object. In a testament that the settlement is fair, reasonable, and adequate, out of 1,780 potential class members, only one has opted out and two have filed statements or objections (addressed substantively herein). Defendants have agreed to pay $1,500,000 to settle all issues arising from this trucking case, a settlement that guarantees a minimum payment of $500 to all class members and allocates additional shares based on seniority and FLSA claim status. Consistent with Tenth Circuit precedent, the settlement permits as an award of expenses, attorney's fees of $500,000 or one-third of the fund, and includes a reasonable service award. Plaintiff thus submits his unopposed motion to grant final approval to the settlement, including certification of the classes and FLSA collective and approval of the award attorney's fees and incentive award. A proposed order is submitted contemporaneous to this filing for the Court's consideration.

TABLE OF CONTENTS

DISCUSSION ................................................................................................................. 1

1.    Factual and Procedural Background ............................................................. 1

      1.1.1  Procedural History............................................................................ 2

      1.1.2  Terms of the Settlement Agreement.............................................. 3

      1.1.3  The Court's Preliminary Review of the Proposed Settlement............. 5

      1.1.4  Settlement Administration and Efforts to Notify the Class................ 5

2.    Legal Standards for Final Approval ............................................................. 6

3.    The Settlement is Fair, Adequate, and Reasonable.................................... 8

      *The outcome of this litigation was never certain*............................................. 9

      *All parties believe the settlement is fair and reasonable*.......................... 10

      *The settlement treats class members equitably relative to each other*........... 10

      *The Notice Process was the Best Notice Practicable*................................. 11

4.    Any Objections should be Overruled...........................................................12

5.    Final Class Certification is Proper ..............................................................14

      *Numerosity* ....................................................................................... 14

      *Commonality*.................................................................................... 15

      *Typicality*.......................................................................................... 15

      *Adequacy* .......................................................................................... 16

      *Predominance* .................................................................................. 16

      *Superiority* ....................................................................................... 17

6.    No Separate Approval is Needed for the FLSA Portion of the Settlement...........17

7.    The Attorney's Fees and Court Costs Requested are Appropriate ...................19

8.    The Settlement Administration Costs are Appropriate ...............................20

9.    The Incentive Award is Appropriate............................................................21

TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................. 14, 16

*Amoco Prod. Co. v. Fed. Power Comm'n,*
    465 F.2d 1350 (10th Cir. 1972) ......................................................................................... 6

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
    167 F.Supp.2d 1216 (D. Colo. 2001) ................................................................................ 7

*Childs v. Unified Life Ins. Co.,*
    2011 WL 6016486 (N.D. Okla. Dec. 2 2011) ............................................... 14, 16, 17, 19, 22

*DeJulius v. New England Health Care Emps. Pension Fund,*
    429 F.3d 935 (10th Cir. 2005) ......................................................................................... 12

*Elston v. Horizon Glob. Ams., Inc.,*
    2020 WL 6318660 (D. Kan. Oct. 28, 2020) ...................................................................... 19

*Flerlage v. US Foods, Inc.,*
    2020 WL 4673155 (D. Kan. Aug. 12, 2020) .............................................................. 14, 15, 16

*Fox v. Transam Leasing, Inc.,*
    839 F.3d 1209 (10th 2016) ................................................................................................ 9

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir.1993) ............................................................................................ 19

*Gundrum v. Cleveland Integrity Servs., Inc.,*
    2017 WL 3503328 (N.D. Okla. Aug. 16, 2017) ................................................................ 19

*Harris v. Chevron U.S.A., Inc.,*
    2019 WL 5846917 (W.D. Okla. July 29, 2019) .................................................................. 7

*Integra Realty Res., Inc.,*
    354 F.3d 1246 (10th Cir. 2004) ........................................................................................ 8

*Kirby v. O'Dens,*
    2015 WL 11170913 (N.D. Okla. Mar. 24, 2015) ............................................................. 14

*Lane v. Page,*
    862 F. Supp. 2d 1182 (D.N.M. 2012) .............................................................................. 12

*Langford v. Devitt,*
    127 F.R.D. 41 (S.D.N.Y. 1989) ....................................................................................... 11

*Lawson v. Procar CRS, Inc.,*
   2019 WL 112781 (N.D. Okla. Jan. 4, 2019) (Kern, D.J.) ..........................................18

*Lucas v. Kmart Corp.,*
   234 F.R.D. 688 (D. Colo. 2006) ........................................................................ 8

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir. 1982) ..........................................................................18

*Marcus v. Kan. Dept. of Revenue,*
   209 F.Supp.2d 1179 (D. Kan. 2002) ....................................................................9

*Millsap v. McDonnell Douglas Corp.,* No. 94-CV-633-H(M),
   2003 U.S. Dist. LEXIS 26223 (N.D. Okla. 2003) ..................................................9

*Montgomery v. Continental Intermodal Group-Trucking LLC,*
   2021 WL 1339305 (D. N.M. Apr. 9, 2021) ............................................................9

*Owner-Operator Ind. Drivers Assoc., Inc. et al. v. C.R. England, Inc.,*
   No. 2:02-cv-950-TS, Doc. 602, (D. Utah June 19, 2014) ......................................22

*Rosenbaum v. MacAllister,*
   64 F.3d 1439 (10th Cir.1995) ..........................................................................19

*Rothe v. Battelle Mem'l Ins.,* 2021 WL 2588873
   (D. Colo. June 24, 2021) ..........................................................................9, 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002) ......................................................................7, 12

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.,*
   749 F.2d 1451 (10th Cir. 1984) ........................................................................ 6

*Shahlai v. Comcast Cable Commc'ns Mgmt., LLC,*
   2020 WL 3577395 (D. Colo. July 1, 2020) ..........................................................19-20

*Suaverdez v. Circle K. Stores, Inc.,* 2021 WL 4947238
   (D. Colo. June 28, 2021) ..........................................................................8, 10, 15

*Tennille v. Western Union Co.,*
   785 F.3d 422 (10th Cir. 2015) ......................................................................12, 16

*Trujillo v. Colorado,*
   649 F.2d 823 (10th Cir. 1981) ........................................................................ 6

*Tuten v. United Airlines, Inc.,*
   41 F.Supp.3d 1003 (D. Colo. 2014) ....................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................15

*Whittington v. Taco Bell of Am., Inc.*,
    2013 WL 6022972 (D. Colo. Nov. 13, 2013) ..........................................................20

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ................................................................................7

## STATUTES

28 U.S.C. § 1658 ....................................................................................................................2

29 U.S.C. § 216(b) ...............................................................................................................17

29 U.S.C. § 255 ......................................................................................................................2

Okla. St. tit. 12, § 95(A)(2) ..................................................................................................2

## OTHER

Manual for Complex Litigation (Third) § 21.311 .............................................................11

Manual for Complex Litigation (Third) § 21.312 .............................................................11

Manual for Complex Litigation (Third) § 30.42 ...............................................................9

Newberg on Class Actions at §§ 8.21 ................................................................................11

Newberg on Class Actions at §§ 8.39 ................................................................................11

## RULES

Fed. R. Civ. Proc. 23 (a)(1) ................................................................................................14

Fed. R. Civ. Proc. 23 (a)(2) ................................................................................................15

Fed. R. Civ. Proc. 23 (e) .......................................................................................................7

Fed. R. Civ. Proc. 23 (e)(2)(D) ..........................................................................................10

DISCUSSION

After extensive exchange of information, arm's-length negotiations, and work with an experienced mediator, the parties reached a fair, reasonable, and adequate settlement of this action, memorialized in the Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement"), Dkt. #47-2. Defendants Hurricane Express, Inc., and Jonathan Ltd. (together, "Hurricane" or "Defendants") have agreed to a gross settlement payment of $1,500,000 to settle claims on behalf of 1,779 truck drivers who have been identified as class members. On August 12, 2022, the Court issued its order granting Plaintiff's unopposed motion for preliminary approval. Doc. 48 at 1. The settlement administrator, ILYM Group, Inc. then initiated the notice process. Only one class member has opted out, and two have filed either statements or objections with the Court. Plaintiff now moves unopposed by Defendants for final approval. For the reasons that follow, the Court should grant final approval of the settlement consistent with the parties' agreement.

## 1.      Factual and Procedural Background

Mr. Turpin alleges he and a class of similarly situated truck drivers were misclassified as independent contractors under standard form agreements they entered into with Hurricane. *See* Complaint ¶3 (Doc. 2). Mr. Turpin alleges that under the agreements he executed, Hurricane overcharged him and the other drivers for unnecessary, erroneous, or valueless purchases. *See id.* ¶¶ 78–81. In particular, Mr. Turpin alleges Hurricane violated the Truth in Leasing Regulations by overcharging a per mile fee for depreciation and preventative maintenance and a daily fee to pay IRS Form 2290 taxes. *See id.* ¶¶ 139–158. Mr. Turpin also alleges that when Hurricane paid him (and other drivers), drivers were paid

an effective rate less than the minimum wage in violation of the Fair Labor Standards Act ("FLSA"). *See id.* ¶¶ 102–11. Finally, Mr. Turpin alleges Hurricane engaged in deceptive and unfair trade practices in violation of the Oklahoma Consumer Protection Act by representing that drivers would be independent owner operators who would earn more money than their experiences bore out. *See id.* at 124–148.

Throughout this litigation, Hurricane has denied any wrongdoing, asserting it properly classified drivers as independent contractors and complied with applicable regulations. *See* **Ex. 1** Declaration of Todd C. Werts ¶ 2 ("Werts Dec."). Hurricane believes the evidence would show any charges assessed on the drivers were properly supported by documentation. *Id.* ¶ 3. And Hurricane argues Plaintiff and the class would be unable to prove damages under the Truth in Leasing Regulations because any charges assessed to drivers were less than what drivers would be able to obtain on the open market. *Id.* ¶ 4. As to the minimum wage claims, Hurricane contends drivers' wages never dipped below $7.25 per hour based on their work schedules. *Id.* ¶ 5. Last, Hurricane argues that it never misrepresented its lease agreements, but even if it did, Plaintiff and the class would not be able to show any damages attributable to it. *Id.* ¶ 6.

### 1.1    Procedural History

This action was initiated in October 2020. The Complaint contains five counts based on alleged statutory or regulatory violations: (I) the FLSA; (II) the Oklahoma Minimum Wage Act; (III) Oklahoma Wage Payment Act; (IV) Oklahoma Consumer Protection Act; and (V) the Truth in Leasing Regulations. Counts I–IV have a three-year statute of limitations, and Count V has a four-year statute of limitations. *See* 29 U.S.C. § 255 (FLSA); Okla. St. tit. 12, § 95(A)(2) (Oklahoma claims); 28 U.S.C. § 1658 (FLR claims).

2

Defendants filed their answers in February 2021. *See* Docs. 27–28. The parties exchanged their initial disclosures and held their Rule 26(f) conference, at which time the possibility of early resolution was discussed. *See* **Ex. 1** Werts Dec. ¶ 7. Hurricane then engaged additional counsel, who entered their appearances in September 2021. *See* Doc. 33–35. Hurricane initially offered to discuss resolving the case on an individual basis. *See* **Ex. 1** Werts Dec. ¶ 8. Plaintiff rejected that offer and served written discovery requests. *Id.* ¶ 9. Hurricane served its responses in December 2021. *Id.* ¶ 10.

In January 2022, the parties agreed to mediate the case under Mr. Turpin's proposed condition that only settlement on a class basis be discussed. *Id.* ¶ 11. Hurricane then provided data related to approximately 25% of the class, and Plaintiff used this data to produce a robust damages model based on the claims pled and the facts on the ground. *Id.* ¶ 12.

The parties attended an all-day, in-person mediation with experienced mediator Ron Mitchell in Joplin, Missouri on May 24, 2022. *Id.* ¶ 13. The mediation ended when both parties accepted the mediator's proposal. *Id.* ¶ 14; Mem. of Understanding (Dkt. #47-1). Following the mediation, the parties executed a complete settlement agreement. *See* **Ex. 1** Werts Dec. ¶ 15; Settlement Agreement (Dkt. #47-2).

### 1.2    Terms of the Settlement Agreement

The settlement agreement provides significant relief for the classes and provides valuable releases for Hurricane. Hurricane has agreed to fund the settlement agreement with a gross settlement payment of $1,500,000. *See* **Ex. 1** Werts Dec. ¶ 16; Settlement Agreement (Dkt. #47-2) at 13.

The agreement creates three settlement classes, of which the majority of class members are members of at least two. These classes, described in full below, include the

following: (1) an opt-in FLSA class (as related to Count I); (2) an Oklahoma claims class (as related to Counts II-IV); and (3) a Truth in Leasing class (as related to Count V). *See* **Ex. 1** Werts Dec. ¶ 17; Settlement Agreement (Dkt. #47-2) at 2–3. The FLSA class and the Oklahoma class have a three-year class period, while the Truth in Leasing class has a four-year class period. *See* **Ex. 1** Werts Dec. ¶ 18; Settlement Agreement (Dkt. #47-2) at 2–3. Class members will first receive a per-capita minimum payment in such amount that no class member receives less than $500 in total net relief. *See* **Ex. 1** Werts Dec. ¶ 19; Settlement Agreement (Dkt. #47-2) at 24–26. Class members shall then be eligible to receive a pro rata portion of the remaining net settlement amount. *See* **Ex. 1** Werts Dec. ¶ 20; Settlement Agreement (Dkt. #47-2) at 24–26. Opt-in members of the FLSA class will receive 1 share per workweek during the class period; the Oklahoma claims class will receive 2 shares per workweek during the class period; and the Truth in Leasing class will receive 2 shares per workweek during the class period. *See* **Ex. 1** Werts Dec. ¶ 21; Settlement Agreement (Dkt. #47-2) at 24–26.

Any unredeemed or uncashed settlement checks after 180 days will be distributed via *cy pres* to truckersfinalmile.org, an IRS 501(c)(3) charity designed to reunite truck drivers and their families in the event of loss of life, debilitating injury, serious illness, or crisis at home or to make mobility improvements at a driver's home. *See* **Ex. 1** Werts Dec. ¶ 22; Settlement Agreement (Dkt. #47-2) at 28. Mr. Turpin chose the proposed cy pres recipient to which Hurricane does not object. *See* **Ex. 1** Werts Dec. ¶ 23. Under no circumstances will any amount of the gross settlement fund revert or otherwise be returned to Defendants. *See* **Ex. 1** Werts Dec. ¶ 24; Settlement Agreement (Dkt. #47-2) at 28.

In consideration for furnishing the gross settlement payment, Defendants will receive releases for all class members who have not opted out of the Oklahoma and FLR classes, as well as releases for any potential FLSA claims from those class members who have affirmatively opted-into the FLSA class. *See* **Ex. 1** Werts Dec. ¶ 25; Settlement Agreement (Dkt. #47-2) at 8, 31. Defendants will also receive a general release from Mr. Turpin, which Mr. Turpin believes has a material value above that of the release for class members. *See* **Ex. 1** Werts Dec. ¶ 26; Settlement Agreement (Dkt. #47-2) at 31–33.

The settlement agreement allows for Mr. Turpin to request an incentive award of $10,000. *See* **Ex. 1** Werts Dec. ¶ 27; Settlement Agreement (Dkt. #47-2) at 9, 14. It also provides for attorney's fees and allows Mr. Turpin's counsel to request fees approved at one-third of the gross settlement amount and their actual costs, up to $500,000 in total. *See* **Ex. 1** Werts Dec. ¶ 28; Settlement Agreement (Dkt. #47-2) at 15–16.

### 1.3     The Court's Preliminary Review of the Proposed Settlement

On August 12, 2022, the Court issued its order granting preliminary approval of the proposed settlement. Doc. 48. The order conditionally certified the classes and FLSA collective at issue in the complaint. *Id.* at 1–2. The Court appointed Mr. Turpin as class representative and the undersigned as class counsel. *Id.* at 2. The Court authorized the retention of ILYM Group, Inc., as settlement administrator. And the Court found on a preliminary basis that the settlement was fair, reasonable, and adequate. *Id.* at 3–4.

### 1.4     Settlement Administration and Efforts to Notify the Class

The parties engaged ILYM Group, Inc. to administer the settlement. Notice was sent to class members by first-class mail and email. Each class members' notice explained the process for opting into the FLSA class or opting out of the remaining classes, how many

workweeks Defendants' records show each respective class member worked during the relevant class periods, and an initial estimate of how many shares of the remaining net settlement fund each class member might be entitled to. *See* **Ex. 1** Werts Dec. ¶ 29; **Ex. 2** ILYM Dec. at ¶ 3, Exemplar Notice. The notice procedure satisfied CAFA requirements. *See* Doc. 49.

The total number of Class Participants is 1,779. After notice was mailed and emailed, 285 notices were returned. Subsequently, 280 notices were successfully traced. Only 124 notices—less than 7% of the total number of individuals identified in the putative class— were ultimately undeliverable. **Ex. 1** Werts Dec. ¶ 30; **Ex. 2** ILYM Dec. at ¶¶ 5-14 (1,780 on the class list with one opt-out). On August 15, 2022, the Notice Packet was emailed to the 1,755 individuals who contained an email address in the Class List. Of those 67 emails were undeliverable. *See* **Ex. 2** ILYM Dec. ¶ 8.

417 class members submitted valid FLSA opt-in claims. Only two FLSA claims were found deficient. One class member opted out of the settlement. And two class members submitted objections or statements to the Court to be taken up at the final fairness hearing. **Ex. 1** Werts Dec. ¶ 31; **Ex. 2** ILYM Dec. at ¶¶ 14-16. The final fairness hearing is set for February 13, 2023, before the Hon. Gregory K. Frizzell. (Dkt. #53).

**2.      Legal Standards for Final Approval**

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colorado*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary

settlements"). This is especially true in complex class actions, as is the case here. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F.Supp.2d 1216, 1229 (D. Colo. 2001). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F.Supp.3d 1003, 1007 (D. Colo. 2014) (quotation omitted).

Rule 23(e) requires judicial approval for any compromise of claims resolved on a class-wide basis. Under the Rule, approval of a class action settlement is a two-step process. Rule 23(e). During the first step, which has already occurred here, the Court conditionally certified the settlement classes, preliminarily approved the settlement, and authorized that notice be given to the Class so that interested Class Members may object to the fairness of the settlement or opt out of the settlement. *See Harris v. Chevron U.S.A., Inc.*, 2019 WL 5846917, at *2 (W.D. Okla. July 29, 2019). In the second step, after notice has been sent, the Court holds a final fairness hearing to address "(1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms" and decide whether to grant final approval. *See id.*

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. Rule 23(e); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). "Importantly, in evaluating the fairness of the settlement, courts are not to decide the merits of the case or resolve unsettled legal questions." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). "This is because the essence of settlement is compromise, and settlements are generally favored." *Id.*

7

3.    **The Settlement is Fair, Adequate, and Reasonable**

To determine whether a class settlement is fair, adequate, and reasonable, the Court

should consider whether:

(1)    the settlement was fairly and honestly negotiated,

(2)    serious legal and factual questions placed the litigation's outcome in
       doubt,

(3)    the immediate recovery was more valuable than the mere possibility of
       a more favorable outcome after further litigation, and

(4)    [the parties] believed the settlement was fair and reasonable.

*In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Each of these factors are

met in this case, and the Court should grant final approval to the settlement.

*Mr. Turpin and class counsel fairly and honestly negotiated the settlement.*

In assessing whether the settlement agreement was negotiated fairly, the Court may

consider the experience of counsel, the vigor with which the case was prosecuted, any

coercion or collusion that may have affected the negotiations themselves, and the assistance

of an experienced mediator. *See Suaverdez v. Circle K. Stores, Inc.*, 2021 WL 4947238, *7 (D.

Colo. June 28, 2021).

The parties negotiated this settlement agreement in good faith. They were

represented by seasoned counsel and worked with an experienced mediator. *See* **Ex. 1** Werts

Dec. ¶ 32. And the mediation ended when both parties accepted the mediator's proposal. *Id.*

¶ 33. Where, as here, a settlement results from "arm's length negotiations between

experienced counsel after significant discovery [has] occurred, the Court may presume the

settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.

8

Colo. 2006); *see also* Manual for Complex Litigation (Third) § 30.42, at 238; *Marcus v. Kan. Dept. of Revenue,* 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."). This was a fairly and honestly negotiated settlement. And, importantly, no objector to the settlement has contended otherwise.

*The outcome of this litigation was never certain.*

The Court should consider whether serious questions of law and fact exist in this litigation and whether the parties would be exposed to significant risks in further litigation. *See Rothe v. Battelle Mem'l Ins.,* 2021 WL 2588873, at *5 (D. Colo. June 24, 2021). The parties considered the risks of continued litigation on both sides in arriving at the settlement agreement. Specifically, continued litigation of the major issues in this lawsuit, such as whether the drivers were misclassified as independent contractors and whether the charges from their settlements with Hurricane were allowable, would require substantial additional factual development and further motion practice. *See* **Ex. 1** Werts Dec. ¶ 34. And the outcome is not certain for either side. *See, e.g.*, *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1220 (10th 2016) (finding class of truck drivers were correctly granted judgment as to liability but reversing in favor of defendant due to a failure by the truckers to demonstrate damages).

*Immediate recovery is more valuable than the possibility of more favorable outcome later.*

The settlement agreement should also be approved because it "enables the class members to avoid significant delay." *Montgomery v. Continental Intermodal Group-Trucking LLC*, 2021 WL 1339305, *6 (D. N.M. Apr. 9, 2021). Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor final approval of the Settlement. *See Millsap v. McDonnell Douglas Corp.,* No. 94-CV-633-H(M), 2003 U.S. Dist.

9

LEXIS 26223, at *43 (N.D. Okla. 2003) ("considering the time value of money, [the settlement amount] distributed to class members today has considerably greater value than it would following a trial and subsequent appeal"). To counsels' knowledge, there are no other claims pending against Hurricane that allege claims similar to those of Mr. Turpin. *See* **Ex. 1** Werts Dec. ¶ 35. Finally, absent approval of the settlement agreement, it is doubtful class members will have any basis for recovery, as the incentive to take any of these claims outside a class basis is relatively small. *See* **Ex. 1** Werts Dec. ¶ 36; *see Suaverdez*, 2021 WL 4947238, at *8.

*All parties believe the settlement is fair and reasonable.*

The settlement here was reached at a mediation, attended by all parties in person, and with counsel. *See* **Ex. 1** Werts Dec. ¶ 37. At the end of the day, and after the parties had negotiated to impasse, the mediator made a final proposal that was agreed to by the parties. *See id.* ¶ 38. Finally, counsel for the parties fully support the settlement agreement and believe in its fairness. *See Rothe*, 2021 WL 2588873, at *6 ("counsels' judgment as to the fairness of the agreement is entitled to considerable weight") (quotation omitted).

*The settlement treats class members equitably relative to each other.*

To be fair, adequate, and reasonable, a proposed settlement must treat class members equitably relative to each other. Rule 23(e)(2)(D). Here, there are 1,779 drivers in the class. The average tenure for a driver with Hurricane is very short, however. *See* **Ex. 1** Werts Dec. ¶ 39. The settlement agreement was structured to guarantee a significant minimum payment ($500) to all class members, especially considering some drivers worked for only a short period of time. *Id.* ¶ 40. Those drivers might have relatively strong claims under the Oklahoma Consumer Protection Act given Hurricane's representations to them upon hiring, but relatively weaker claims under the minimum wage laws or Truth in Leasing regulations,

which need time to accrue. *Id.* ¶ 41. The settlement also provides for potentially more compensation for those class members that opt-into the FLSA collective as they will be tendering a broader release than those that do not opt-in. *Id.* ¶ 42. All in all, the settlement agreement strikes a balance in providing relief among the drivers, with all drivers receiving a significant economic payment while drivers who had accrued more workweeks still receive larger settlement shares. *Id.* ¶ 43.

*The Notice Process was the Best Notice Practicable*

The Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Newberg on Class Actions at §§ 8.21 and 8.39; Manual for Complex Litigation (Third) at § 21.311 and 21.312. With these measures, the notice process satisfies the "best practicable notice" standard. *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

The Court should consider that the notice process in this case was the best notice practicable, and the high degree of participation in the settlement militates in favor of final approval. Here, the total number of Class Participants is 1,779. **Ex. 1** Werts Dec. ¶ 44. After notice was mailed and emailed, 285 notices were returned. *Id.* ¶ 45. Subsequently, 280 notices were successfully traced. *Id.* ¶ 46. Only 124 notices—less than 7% of the total number of individuals identified in the putative class—were ultimately undeliverable. *Id.* ¶ 47.[1] 417 class members submitted valid FLSA opt-in claims. *Id.* ¶ 48. Only two FLSA claims were found deficient. *Id.* ¶ 49. One class member opted out of the settlement. *Id.* ¶ 50. And two class

---

[1] This mail notice was supplemented by email notice to 1,755 class members. Of those, only 67 were undeliverable. *See* **Ex. 2** ILYM Dec. ¶ 8.

members submitted objections or statements to the Court to be taken up at the final fairness hearing. *Id.* ¶ 51. All in all, a high percentage of absent class members have been notified (over 90%), and there is a high degree of participation in the settlement (over 99%). *Id.* ¶ 52. Where this is the case, the notice procedures satisfy the standards in the Tenth Circuit. *See DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (due process and Rule 23 satisfied where record indicates that "only seventy-seven percent of class members actually received notice") (citation omitted). The Tenth Circuit has found that a district court does not abuse its discretion in determining a settlement is fair, adequate, and reasonable where there is "an extremely small percentage of class members [who] opted out." *Lane v. Page*, 862 F. Supp. 2d 1182, 1229 (D.N.M. 2012) (citation omitted). In this case, only one class member decided to opt out, and two have filed statements or objections with the Court, addressed immediately below.

### 4.    Any Objections should be Overruled

The Court may exercise its sound discretion and independent judgment in considering objections to a class action settlement. *See Rutter & Wilbanks*, 314 F.3d at 1186–87 (citation omitted); *Tennille v. Western Union Co.*, 785 F.3d 422, 440 (10th Cir. 2015). Unnamed class members are entitled to due process rights. *Tennille*, 785 F.3d at 436. Two class members have submitted statements or objections. These should be heard, but overruled. They fail to demonstrate the settlement is anything but fair, adequate, and reasonable.

Mr. Michael Cranston filed a statement with the Court on December 27, 2022. Doc. 55. Notably, Mr. Cranston's statement also included a signed opt-in form. *See id.* at 8–9. As can be discerned, Mr. Cranston has a complaint about the level of control Hurricane exercised over

drivers, including that Hurricane allegedly did not return his birth certificate. While the issue with the birth certificate is individual—and cannot be addressed on a class basis—the issues of control Mr. Cranston raises go to the heart of this litigation and Mr. Turpin's allegations that Hurricane misclassified its drivers as independent contractors. The "heartache and financial burdens" Mr. Cranston raises are intended to be addressed by the settlement in this case. Thus, Mr. Cranston's statement should not be construed as any objection.

Mr. Michael Burns also filed his objection with the Court on December 27, 2022. Doc. 56. Importantly, he also submitted a consent to join form in the copy of the "objection" mailed to undersigned counsel. **Ex. 1** Werts Dec. ¶ 53. Prior to Mr. Burns' filing, he called Plaintiff's counsel and spoke with the undersigned, Todd Werts. *Id.* at ¶ 54. Based on that call, his opt-in was expected, though, so too was his filing of concerns about the defendant. *Id.* at ¶ 55.

Mr. Burns' filing discusses eight topics, but all these go to the level of control Hurricane exercises over drivers or charges Hurricane assesses to drivers in settlement statements. In other words, like Mr. Cranston's statement, Mr. Burns' objection simply reiterates the claims Mr. Turpin has litigated in this case. Mr. Burns may believe that the settlement reached in this case, or the amount he may have been owed, do not cover all of Hurricane's surcharges. But the mere fact does not make the settlement agreement reached here unfair, inadequate, or unreasonable. Particularly in light of the fact that Hurricane's position is that it operated in accordance with its contracts and followed all applicable regulations. Accordingly, though Mr. Burns would evidently like to have Hurricane pay more, there is no cause to undo the deal the parties have struck following arms-length negotiations with the help of an experienced mediator.

Mr. Cranston's statement and Mr. Burns' objection are notable for what they do not say: neither addresses the fairness, reasonableness, or adequacy of the settlement, nor do they address the proposed attorney's fees and incentive award. Neither question the adequacy of representation in this case or contend class counsel suffers conflicts of interest. Neither has any issue with the settlement allocution among class members. And neither raises a legal issue that the parties have not briefed or raised in negotiations. On consideration of these filings, the Court should overrule any objections and approve the proposed settlement. *Cf. Kirby v. O'Dens*, 2015 WL 11170913, at *1 (N.D. Okla. Mar. 24, 2015) ("the court will not become an advocate for the pro se party").

**5.    Final Class Certification is Proper**

"A certified class must satisfy the requirements of [Rule] 23, even in a settlement context." *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, *2 (N.D. Okla. Dec. 2 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)). But when a proposed settlement class satisfies the requirements of Rule 23, it should be certified for settlement purposes. *See Flerlage v. US Foods, Inc.*, 2020 WL 4673155, at *2 (D. Kan. Aug. 12, 2020). And the Court need not inquire whether a proposed class for settlement purposes would present management problems if the case were tried. *See id.* Each of the Rule 23(b) requirements is met for these classes, and the Court should grant final certification for the classes herein.

*Numerosity*

The proposed classes here are so numerous that joinder of all members is impracticable. Rule 23(a)(1). There are 1,775 drivers in total, and only 124 notices were

14

returned undeliverable. The numerosity requirement is readily met. *See Harris*, 2019 WL 5846917, at *4.

*Commonality*

Commonality requires a finding that class members have suffered the same injury. Rule 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). In other words, the claims must be capable of class wide resolution. *Dukes*, 564 U.S. at 350.

Common questions of law and fact drive this litigation. These include: (1) whether Hurricane's form agreements with drivers properly classified them as independent contractors, (2) whether those agreements improperly assessed charges to drivers in violation of the Truth in Leasing regulations; (3) whether drivers were paid less than minimum wage based on Hurricane's records; and (4) whether Hurricane's representations to drivers at the time of hiring violated the Oklahoma Consumer Protection Act. These common questions were susceptible to common answers based on representative evidence. *See* **Ex. 1** Werts Dec. ¶ 56. Accordingly, the commonality requirement is met in this case.

*Typicality*

Typicality requires the class representative's claim to be typical of the class he seeks to represent. *See Flerlage*, 2020 WL 4673155, at *3. Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendants' liability. *See Suaverdez*, 2021 WL 4947238, at *5.

Here, Plaintiff alleges that Hurricane's general business practices were applied to Plaintiff just as to all the other members of the classes. *See* **Ex. 1** Werts Dec. ¶ 56. He further contends Hurricane used similar form agreements among the drivers and Plaintiff seeks

15

recompense for the same drivers as the other class members. *Id.* Where this is the case, typicality is met. *See Childs*, 2011 WL 6016486, at *7.

*Adequacy*

The adequacy inquiry explores whether there are any conflicts of interest between the class representative or his counsel and the class. *See Tennille*, 785 F.3d at 430. As discussed herein, Mr. Turpin has fairly and adequately protected the interests of the class. *See Flerlage*, 2020 WL 4673155, at *3. As for class counsel, undersigned counsel are experienced in the area of class action and employment related litigation, having litigated such cases around the country for nearly two decades. *See* **Ex. 1** Werts Dec. ¶ 57.; *see also* Firm Resume (Dkt. #47-3 at 13–32). Neither class counsel, nor Mr. Turpin have any conflicts of interest with the class. **Ex. 1** Werts Dec. ¶ 58. And throughout the course of the litigation and the notice process, no conflicts have been identified among class counsel. *Id.* at ¶ 59. Accordingly, adequacy is met.

*Predominance*

Satisfaction of the commonality element alone does not satisfy the predominance requirement of Rule 23(b). *See Amchem Prods.*, 521 U.S. at 623–24. Rather, common issues predominate when the resolution of the common questions will impact each class member's underlying claim. *See Childs*, 2011 WL 6016486 at *9.

Here, success by the Defendants on the common questions identified above would result in a defense judgment against the entire class, likely including a hefty Bill of Costs. *See* **Ex. 1** Werts Dec. ¶ 60. Similarly, Plaintiff contends that the claims for the putative classes could be presented based primarily on representative evidence and Defendants standard

16

agreements. *Id.* As such, it cannot be said that individual issues would overshadow the common questions here. *See Childs*, 2011 WL 6016486 at *9.

*Superiority*

The superiority analysis under Rule 23(b)(3) considers whether a class resolution is a better way to resolve the claims than other methods of adjudication. *Id.* Under Rule 23(b)(3), the Court should consider four factors:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Here, the individual claims are relatively modest. And no other cases have been filed against Defendants for the same alleged violations. Finally, Defendants are based in the Northern District of Oklahoma making this the natural forum for the adjudication of the primarily federal claims at issue here. *See* **Ex. 1** Werts Dec. ¶ 61. Given these facts, the superiority element is satisfied here. *See Childs*, 2011 WL 6016486 at *10.

All in all, the Court should grant final certification to the classes herein.

**6.      No separate approval is needed for the FLSA portion of the settlement.**

Under the FLSA, no one may be a party plaintiff to an FLSA case unless they have consented to join the action. *See* 29 U.S.C. § 216(b). In this district, however and indeed in the majority of districts in this circuit, judicial approval is not required to settle an FLSA

claim. *See Lawson v. Procar CRS, Inc.,* 2019 WL 112781, *3 (N.D. Okla. Jan. 4, 2019) (Kern, D.J.).

In *Lawson*, the court explained that the full analysis set out by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), was not required in cases where a bona fide dispute has been presented. *See Lawson*, 2019 WL 112781 at *3. The *Lawson* court found that case to be a bona fide dispute because the named plaintiffs filed a consent to join the litigation, was represented by private counsel who developed the factual and legal theories through the adversarial process and conducted sufficient discovery to evaluate the value of the case. *Id.* Further, there was no evidence that the settlement was the product of undue pressure or poor legal advice. *Id.* Here, and as discussed above, Mr. Turpin and his counsel have worked through these same steps. And this settlement was reached as the result of a mediator's proposal at the end of a day-long mediation between the parties. *Id.* ¶¶ 21–22.

Beyond the process, there can also be little doubt that this case, like *Lawson*, presents a bona fide dispute between the parties as to liability under the FLSA. To succeed in their FLSA claims, class members would first have had to demonstrate they were employees under the FLSA, rather than independent contractors. Defendants' documents and legal position have been consistent throughout this litigation that the drivers were independent contractors. Assuming plaintiffs crossed this threshold hurdle, the parties then faced disputes over the number of hours actually worked by the drivers as well as how the drivers' compensation system should be compared to those hours to determine whether there was a minimum wage violation. Each of these elements was contested by the parties. *See* **Ex. 3**

Werts Dec. ¶ 62. Accordingly, no separate approval of the FLSA component of this settlement is required apart from it being a part of the overall, Rule 23 class action settlement.

To that end, the settlement notice procedure outlined above includes a process for class members to opt into this case and provide a release of their FLSA claims. Those class members that opt in as FLSA class members will receive one additional settlement share per workweek they had during the FLSA class period. This is fair treatment within the overall context of this settlement and should be approved. *Id.* ¶ 63.

**7.    The Attorney's Fees and Court Costs Requested are Appropriate**

Courts in the Tenth Circuit are unanimous in concluding that "[t]he preferred method of determining a reasonable attorney fee award in common fund cases is the percentage of fund analysis." *Childs*, 2011 WL 6016486, at *15 (citing *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir.1995); *Gottlieb v. Barry,* 43 F.3d 474, 482–483 (10th Cir.1993)).

Here, counsel for the putative class request one-third of the total settlement fund as their attorney's fees and expenses—$500,000 in total. *See* **Ex. 3** Werts Dec. ¶ 64. The percentage of the settlement fund (1/3) is the well-worn standard for contingency fees in class action cases that are approved in the Tenth Circuit. *See Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."); *Elston v. Horizon Glob. Ams., Inc.*, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) ("When the proposed settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable.") (quotation omitted). Indeed, courts in the Tenth Circuit have approved even higher fees in class cases. *See Shahlai v.*

19

*Comcast Cable Commc'ns Mgmt., LLC*, 2020 WL 3577395, at *4 (D. Colo. July 1, 2020) (finding that a 58.4% fee award was reasonable "considering the effect expended on this case by class counsel, the risks and difficulties inherent in this sort of litigation, the discovery undertaken, and the skill required and dedication displayed over the litigation of this matter"); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."). All in all, this is a reasonable attorney's fee considering the nature of the case, counsel's prosecution of the action, and the result reached on behalf of the putative classes. *See* **Ex. 1** Werts Dec. ¶ 65.

In litigating this case, counsel has expended $5,594.15 in litigation expenses. *Id.* at ¶ 66. These expenses include the filing fee, service fee, Westlaw/Lexis legal research, mediation fees, necessary printing, as well as necessary travel expenses. *Id*. These expenses are reasonable and typical for litigation of this type. *Id.* at ¶ 67. Class Counsel's expenses are part of the amount "not to exceed $500,000" contemplated under the Settlement Agreement. Settlement Agreement (Dkt. #47-2) at 24. Therefore, these expenses are subsumed within the one-third common fund fee requested herein. In short, the Court should approve the attorney fee and expense reimbursement requested herein.

8. **The Settlement Administration Costs are Appropriate**

The settlement administrator ILYM Group, Inc., is charging $15,000 for their services in administering this settlement. *See* **Ex. 2** ILYM Dec. ¶ 14. This is consistent with their bid. *See* **Ex. 1** Werts Dec. ¶ 68. The classes were notified in the notice that the costs of administration would be paid out of the settlement, and only two class members have made filings in

20

advance of the fairness hearing, neither of which truly object to the fairness, adequacy, and reasonableness of the settlement. *See* **Ex. 1** Werts Dec. ¶ 69; Notice (Dkt. #47-4). ILYM performed the notice administration according to the settlement agreement, achieving the benchmarks expected at preliminary approval. *See* **Ex. 1** Werts Dec. ¶ 70. Accordingly, ILYM's requested administration fee in the amount of $15,000 should be approved.

### 9.    The Incentive Award is Appropriate

The settlement agreement allows for a $10,000 Incentive Award for Mr. Turpin. He has more than fulfilled his duties as Class Representative. First, he self-identified his potential claim by contacting his prior attorney, Charles Wooten. *See* **Ex. 1** Werts Dec. ¶ 71; **Ex. 3** Turpin Dec. ¶ 1. Mr. Turpin then coordinated calls between counsel and other drivers who provided significant additional information about the practices ultimately challenged in this litigation. *See* **Ex. 1** Werts Dec. ¶ 72; **Ex. 3** Turpin Dec. ¶ 2. He assisted counsel by providing documents, answering questions, and assisting with preparing the complaint and initial disclosures. *See* **Ex. 1** Werts Dec. ¶ 73; **Ex. 3** Turpin Dec. ¶ 3 He was willing to refuse to mediate on an individual basis when he could have to the detriment of the class. *See* **Ex. 1** Werts Dec. ¶ 74; **Ex. 3** Turpin Dec. ¶ 4. Rather, he agreed to spurn Hurricane's individual overtures and agreed to settlement talks when Hurricane agreed the discussion would only be had on a classwide basis. *See* **Ex. 1** Werts Dec. ¶ 75; **Ex. 3** Turpin Dec. ¶ 5. He travelled from his home in eastern Missouri to attend the all-day mediation in Joplin, Missouri, and was an active participant in the settlement negotiation. *See* **Ex. 1** Werts Dec. ¶ 76; **Ex. 3** Turpin Dec. ¶ 6. And Mr. Turpin believes this settlement is fair reasonable and adequate to the class. *See* **Ex. 3** Turpin Dec. ¶ 7. More so, this award represents only .66% of the common

settlement benefit. *See, e.g.*, *Childs*, 2011 WL 6016486, at *16 (approving $10,000 incentive award of $900,000 common fund); *Owner-Operator Ind. Drivers Assoc., Inc. et al. v. C.R. England, Inc.*, No. 2:02-cv-950-TS, Doc. 602, (D. Utah June 19, 2014) (approving incentive awards of $15,000 each for three individual named plaintiffs in similar case). Given the importance of the assistance provided by the Class Representative here, the Incentive Award is fair and reasonable and should be approved.

CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court grant final approval of the Settlement, as well as to the attorney fee, expense, and incentive awards requested herein, and order the Parties and Administrator to carry out the terms of the Settlement Agreement.

Dated: January 23, 2023                    Respectfully submitted,

TTB LAW

/s/ Joshua S. Turner
Joshua S. Turner, OBA # 22321
219 E. Main St.
Norman, OK 73069
Tel:    405-364-8300
Fax:    405-364-7059
Email: josh@ttb-law.com

LEAR WERTS LLP

/s/ Todd C. Werts
Todd C. Werts, *pro hac vice*
103 Ripley Street
Columbia, Missouri 65201
Tel:    573-875-1991
Fax:    573-875-1985
Email: werts@learwerts.com

ROBERTS, WOOTEN & ZIMMER, LLC

Charles R. Wooten, *pro hac vice*
10438 Business 21
Hillsboro, MO  63050
T: 636-797-2693
F: 636-789-4205
E: charleswooten@rwzlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the above and foregoing was filed with the Court's CM/ECF system on January 23, 2023. That system will electronically serve all those entitled to notice in this case.

/s/ Todd C. Werts